[No. 3610. Decided June 28, 1900.]

THE STATE OF WASHINGTON, *Respondent*, v. HERBERT COATES, *Appellant*.

CRIMINAL LAW—INSTRUCTIONS—CORROBORATION OF EVIDENCE OF ACCOMPLICE.

A charge to the jury to act upon the testimony of an accomplice of defendant with great care and caution, and subject it to a careful examination in the light of all the evidence in the case; to be satisfied with its truth beyond a reasonable doubt, and to be so satisfied that they could rely upon it, is sufficient

without saying anything to them about the corroboration of his evidence.

SAME—HARMLESS ERROR—EXAMINATION OF WITNESSES.

Error of the court in limiting the extent of cross-examination is harmless, where the party complaining is subsequently allowed to go fully into the questions upon further cross-examination; or where the matters sought to be elicited are subsequently established by the testimony of other witnesses.

TRIAL—MOTION TO STRIKE TESTIMONY—COMMENTS BY COURT ON FACTS.

Upon a motion to strike out all of a witness's testimony, part of which was relevant and part irrelevant, the action of the judge in indicating what portion of the testimony was relevant and instructing the jury to disregard all else testified to by the witness, when no indication is given by the judge of what his opinion is on the testimony submitted, does not amount to a comment on the facts within the inhibition of the state constitution.

WITNESSES—SCOPE OF CROSS-EXAMINATION.

Where the testimony of a witness upon his examination in chief was confined to a conversation he had with defendant, which tended to connect the defendant with the commission of the crime charged, it is not error to restrict his cross-examination to matters brought out on the direct examination concerning such conversation.

EVIDENCE—CHARACTER OF ACCUSED—INCOMPETENCY OF PARTICULAR ACTS.

Where the chief of police had been put upon the witness stand by the defendant to show that defendant had been employed by the police force in ferreting out crimes and criminals, and had testified fully as to the nature and extent of his employment, it was not error to refuse to permit the witness to testify whether or not the defendant's work was satisfactory during the time he worked for the force, inasmuch as the character or reputation of a defendant cannot be shown on direct examination by evidence of particular acts.

SAME—REPUTATION OF WITNESS.

After a witness has testified to the reputation of another witness for truth and veracity in the community, and that it was bad, it is not error to refuse to allow the witness to answer a question as to whether or not he would believe under oath the witness whom it is sought to impeach.

SAME—IMPEACHMENT OF WITNESS—REBUTTAL.

Where the credit of an accomplice who is being examined as a witness is attacked upon the ground that he had made statements inconsistent with the statements he had made in court, testimony may be heard to show that at other times and on other occasions the witness had made statements consistent with his testimony given in court; it appearing that the statements made by him inconsistent with his testimony were such as the police officers had wrung from him reluctantly under what is known as the "sweating process."

APPEAL—SUFFICIENCY OF EVIDENCE.

Although the evidence in a criminal case may not have been of the most satisfactory and convincing kind, the verdict of the jury should not be disturbed on appeal, where there was evidence tending to show every material fact necessary to show the guilt of the defendant; and particularly so when the court who tried the case has refused to interfere with the verdict.

Appeal from Superior Court, Pierce County.—Hon. WILLIAM H. H. KEAN, Judge. Affirmed.

*Walter M. Harvey,* for appellant.

*Fremont Campbell,* Prosecuting Attorney, for the State.

The opinion of the court was delivered by

WHITE, J.—The appellant was tried in the superior court of Pierce county and convicted of the crime of burglary, and on November 7, 1899, was sentenced by the court to imprisonment in the penitentiary for the term of five years. Before such sentence, motions for new trial and in arrest of judgment were overruled. Appellant prosecutes this appeal from the judgment and sentence of the lower court.

On the night of March 19, 1899, the safe in the office of the Tacoma theater was broken open and in the neighborhood of five hundred dollars taken. The prosecution relied almost entirely upon the testimony of one Roy Kauffman to secure a conviction. This witness admitted on

the stand that he was an accomplice in the crime for which
the appellant was on trial, and that he had come from
the Walla Walla state penitentiary to give his testimony
in this case, having been sentenced upon the charge of bur-
glarizing a store across the street from where the burglary
in this case is alleged to have been committed. The story
told by Kauffman upon the stand was substantially this:
That previous to the alleged burglary he had met the ap-
pellant four times, when, so he states, it was proposed that
they burglarize the Tacoma theater; that he came down
town on the car Sunday evening, March 19, 1899, about
half past six o'clock, and met the appellant at the corner
of Ninth and C streets, near the theater building; that
together they went through the C street entrance and up
three flights of stairs, gaining an entrance over the
transom; from there they went down through the foyer
and opened the box office window; that appellant went
through the window into the office, then opened the door
leading from the box office out into the foyer, and Kauff-
man remained outside the office on watch; that after turn-
ing on the light and working a few minutes with a ham-
mer and a punch which they had secured in the Standard
House Furnishing Company's building, the appellant
broke open the safe and took out its contents; then the
appellant came out and handed Kauffman a sack which
contained about $125, which the appellant said was all.
Kauffman stated that two days after the burglary he met
the appellant and told him that he had seen a statement
in the paper that more than $125 had been extracted from
the safe, and that, if so, the appellant should not demand
any further money from him, as he had his share. The
witness Kauffman made a confession about the 30th of
March, 1899, to W. W. Thompson, James Nevins and
George Ashby, policemen and detective officers, under cir-

cumstances hereinafter detailed. From the testimony of J. H. Read, chief of police of Tacoma, it would seem that the appellant was helping the detective force of Tacoma ferret out criminals; that the appellant was a "stool pigeon," so called, and was put to work among the thieves. As the chief of police expressed it in his testimony, they used "people that can get in and associate themselves with thieves and hard characters, in order to find out what their business is in the city, and what they are going to do, and so forth." It was claimed by the appellant that he had furnished the information leading to the arrest and conviction of Kauffman, and that revenge for his so doing was the motive influencing Kauffman in testifying against him. The appellant was boarding at the city jail, and he undertook to show, by the cook at the jail, that, during the hours that Kauffman testified the burglary was being committed, he was spending the evening with the cook. The cook testified strongly in support of this contention. The other material facts in the case are alluded to in the opinion.

One of the court's instructions to the jury was as follows:

"In regard to the testimony of the witness, Roy Kauffman, the court instructs you that, while it is a rule of law that a person may be convicted upon the uncorroborated testimony of an accomplice, still a jury should always act upon such testimony with great care and caution, and subject it to careful examination in the light of all other evidence in the case, and the jury ought not to convict upon such testimony alone, unless after a careful examination of such testimony you are satisfied beyond all reasonable doubt of its truth, and that you can safely rely upon it."

The appellant complains of this instruction, and says:

"Nowhere is anything said to the jury about corroboration; the word is nowhere used, and the inference from the language of the court is that evidence of the accomplice, standing alone, is all right and sufficient in itself."

In effect, the court told the jury by this instruction that it could convict the appellant upon the uncorroborated testimony of an accomplice, at the same time giving the ordinary precautionary charge as to how the jury should act on such testimony. In the case of *Edwards v. State*, 2 Wash. 291 (26 Pac. 258), the court says:

". . . there may occur other cases where, from all the circumstances, the honest judgment will be as thoroughly satisfied from the evidence of the accomplice of the guilt of the defendant as it is possible it could be satisfied from human testimony; and in such cases justice demands that the evidence be accepted, so far as the court is concerned."

This being the case, it was not necessary to tell the jury that the evidence of the accomplice should be corroborated. In this instruction the court told the jury to act upon the testimony of the accomplice with great care and caution, and subject it to a careful examination in the light of all the evidence in the case; to be satisfied of its truth beyond a reasonable doubt, and to be so satisfied that they could rely upon it. This was most favorable to the appellant. To single out the testimony of this witness, even though he was an accomplice, and to caution the jury as to how his testimony should be received, was all the court was required to do; and under our law it may be questioned whether the court was required to go to this extent, for we have a constitutional provision which forbids the court to comment upon the facts. The jury was told to view the testimony of Kauffman in the light of all the other evidence, and we will point out further on in

this opinion other evidence sufficient to corroborate his testimony.

The appellant, as a second assignment of error, complains that the court erred in refusing to permit appellant's counsel, on cross-examination of witness Kauffman, to trace the money, the proceeds of the burglary, and to lay thereby the foundation to impeach the witness as to how he disposed of the money. As a rule,

"A trial court should permit the defense in the cross-examination of an accomplice to go into every species of questioning that can affect or impair his credit as a witness. The extent of cross-examination under such circumstances and for such a purpose, is largely within the discretion of the trial court; and unless the evidence shows that discretion to have been grossly abused, the appellate court will not reverse." 3 Rice, Evidence, § 325, p. 517.

However, an examination of the statement of facts shows that, after the ruling of the court complained of under this assignment, the appellant was allowed to go fully into the question as to the disposition of the money, thereby obviating the objection; and, from an examination of the statement in this respect, we find no abuse of discretion by the trial court.

The appellant, as a third assignment of error, complains that he was not allowed, upon cross-examination of Kauffman, to show the large number of burglaries which he (Kauffman) had committed. What we have said under the second assignment of error as to the latitude to be allowed in the cross-examination of an accomplice applies to this assignment. It is true that, on the cross-examination of Kauffman, he was asked how long he had been engaged in the business of burglarizing houses, and if he had not admitted to the detectives, Nevins and Ashby, that he had committed a number of burglaries in the city of Tacoma, to which he answered, "No," and the answer was

allowed to stand. Objections to these questions were made by the prosecuting attorney, and the objections were sustained, and exceptions were duly noted. These questions were relevant for the purpose of discrediting the witness and for laying the foundation on which to impeach him, and, if the matter had been allowed to rest without further testimony, it might have been prejudicial to the appellant. But the detectives, Nevins and Ashby, were called by the defense, and, over the objection of the prosecuting attorney, were allowed to testify that Kauffman made a confession to them shortly after he was arrested, in March, 1899, and that he confessed to burglarizing the traction company's safe on Railroad street, in Tacoma, twice, and confessed to the burglary for which appellant was on trial, to a burglary of the Yellowstone saloon, in Tacoma, and the Standard Furniture Company, in Tacoma, eight or nine times, in all which he acted alone. Notwithstanding the rulings of the court, the impeachment of the witness as to his confession was allowed, and his character as a professional burglar was pretty well shown. Under these circumstances, no harm was done the appellant by the court's ruling. This court has held that it will not reverse a case for harmless errors, where it is apparent that no injury has been done the party complaining of them.

The fourth error assigned is that the court limited the cross-examination of a witness named Bradley, and would not allow him to detail, over objections by the state, a certain conversation between Mr. Smalley, attorney for the appellant,—and who was also attorney for Bradley,—and Bradley, which occurred while Bradley was counseling with Mr. Smalley relative to another and distinct crime with which Bradley was charged, and in which conversation something was said about the appellant's admissions to Bradley about being connected with Kauffman in the

burglary of the theater. The court ruled that the com-
munication was privileged, and would not admit it. It
must be remembered that Bradley was not an accomplice
in the crime for which appellant was on trial. The rule
is,—and that is the extent of the authorities cited by the
appellant,—that,

"An accomplice who consents to become a witness for
the people, *on the trial of his associates,* for the offense
charged, must disclose all that he and his associates may
have said or done in relation to such offense, and cannot
be excused from testifying to statements made by him to
his attorney on the ground of their being privileged com-
munications."

However, no exception was taken to the ruling of the
court, and for that reason it is unnecessary to consider this
alleged error further.

In the fifth assignment of error it is claimed that the
court commented upon certain testimony. A witness by
the name of Silbon, who appears to have been a profes-
sional receiver of stolen goods, was called by the state.
His testimony takes up eight pages of the type-written
record. Most of it was irrelevant and was brought out by
both the state and appellant, but no exceptions were saved
in this respect. About the only portion of his testimony
that was relevant was, that he had a conversation with the
appellant, when the appellant said: " 'I am raising money
to help my friend. Can't you go to work and contribute
some money and help?' And I [Silbon] said, 'Who is
that fellow?' And he [appellant] said, 'That fellow
named Kauffman, that was arrested for going into the
theater.' And I [Silbon] said, 'Excuse me! When I am
in nobody help me, and I don't see why I should help
him.' " On cross-examination the following took place:

"Question. Well, are you not mistaken in the man,—if he didn't ask you to assist a man by the name of Billy King, who shot some one in the Klondike Saloon,—help him to get an attorney? Isn't that the man that he asked you to help, instead of Kauffman?

Answer. No, I don't know; I think it was Kauffman. I don't take much stock in the business. He said, 'A friend of mine has been arrested and in jail;' and I said, 'Who?' And he said, 'That fellow in the theater,' and I don't know as he mentioned any name or not. And I said, 'My dear man, I am in trouble myself, and no one help me; you do the best you can, you and your partner;' and that is the last of it.

Q. You are not sure, then, whether it was Kauffman or King?

A. I think he mentioned the man that was arrested for the theater. It must be about the 25th of March, or something similar to that. I couldn't say for sure, but I think it was Kauffman."

There was more testimony to the same effect as the above on re-direct and re-cross-examination. The appellant's counsel then made a motion, without asking the court to send out the jury, to strike out *all* the testimony of the witness. The record then shows:

"The Court: I think we will strike it out.

Mr. McMurray (Deputy Pros. Atty.): Do you strike out all the testimony?

(And after argument [the record fails to show what this argument was]):

The Court: I think that part of it is material in which the witness offered testimony tending to show that the defendant here was interested in seeing that his friend Kauffman got counsel, and so forth, for an offense committed in the theater on or about this time.

Mr. Smalley: There isn't any such testimony in the record.

The Court: It is a question for the jury.

Mr. Joab: Can the stenographer read it?

The Court: No, sir. The court instructs the jury to disregard all of the last witness' testimony, except that referred to by the court,—such testimony tending to show or touching the matter of the defendant approaching the witness for the purpose of getting his aid in some way or other to assist his friend Kauffman, or his friend, in relation to some offense committed in the theater.

Mr. Smalley: Now, if the court please, with all due respect to the court, we desire to take an exception to the statement of the court wherein he attempts to quote the testimony.

The Court: I am not quoting the testimony.

Mr. Smalley: You did not in the last statement, but the statement just before that.

The Court: No.

Mr. Smalley: You recollect, the testimony that I said was not in the evidence?

The Court: No; I am not quoting any testimony, gentlemen of the jury. It is entirely your province; I am not indicating what the testimony is at all; it is for you. The court has no opinion upon the evidence and does not desire to quote any evidence. You heard it. I am simply pointing out to you that part of the evidence, tending to show, if in your opinion there had been any testimony offered of that character."

In view of what occurred before the court, we cannot see that this colloquy falls within the rule laid down by this court in *State v. Crotts, ante,* p. 245 (60 Pac. 403). In that case the court says:

" There are different ways by which a judge may comment upon the testimony, within the meaning of the constitution referred to above. The object of the constitutional provision, doubtless, is to prevent the jury from being influenced by knowledge conveyed to it by the court of what the court's opinion is on the testimony submitted."

Here the court expressly tells the jury he has no opinion on the subject,—that it is for them entirely. Under the circumstances here developed, to hold that the court was

commenting on the testimony would, in trials, prevent the court from pointing out any testimony, when passing on a motion as to its relevancy.

In *Blue v. McCabe,* 5 Wash. 125 (31 Pac. 431), in passing upon a motion for a non-suit, the court remarked, in the presence of the jury, "that the testimony showed that the transfer of the note sued on was made by the officers of the Kettle Falls Improvement Company." It was complained that that was commenting on the facts in the case. The court said:

"We cannot assent to the proposition. When counsel make a motion for a non-suit they know that it is a challenge to the court to determine the sufficiency of the facts adduced by the plaintiff, and that, in deciding the motion, the judge may find it necessary to allude to the evidence. It would be going entirely too far to hold that the denial of the motion must be limited to the formal words, since it is in the highest degree proper that the judge should give his reasons for his action."

So, too, in this case, the motion went to the exclusion of *all* the testimony of the witness. It was certainly proper for the court, in passing on such a motion, in a general way to indicate the testimony retained for the jury's consideration.

In *Patchen v. Parke & Lacy Machinery Co.,* 6 Wash. 486 (33 Pac. 976), it is said:

"An incidental allusion to the facts called to the court's attention in determining a motion for a non-suit is not error."

As we have said, there is no difference between a motion for a non-suit and a motion of the kind under consideration. Here the motion was to strike *all* the testimony of the witness. He had testified on many subjects, and at great length, without exceptions being taken by the appellant; but a small part of the testimony was relevant, and

it was necessary for the trial judge to indicate the part retained. This he did by general reference, expressly cautioning the jury that he was giving no opinion as to its truthfulness or falsity.

The sixth error complained of is that the court erred in restricting the cross-examination of the witness Turner. The direct examination of the witness was entirely in regard to a conversation with the defendant in front of the Owl theater, on Pacific avenue, and he was not interrogated concerning anything else. The cross-examination of this witness, which the appellant claims was restricted, was neither relevant, material, nor proper cross-examination, but was all in regard to whether or not witness had ever met Roy Kauffman, and when he had met him, etc. Witness was allowed to answer everything asked concerning the conversation or relation he had with defendant, brought out on direct examination. The state objected, and the court sustained the objection to witness going into or testifying regarding any talk or relations he had with Kauffman not brought out on direct examination. This was proper and the court did not err in so doing. The extent and character of cross-examination rests largely in the discretion of the court. It was not error to allow this testimony to remain in the record, because it was testimony of an admission of the defendant tending to connect him with the commission of the crime. Kauffman had testified that he had made a confession of his share in this crime, to the reporter of the "News," on April 25th. Now, this witness says that it was at the time Kauffman made his confession in the "News" that he had a conversation with defendant. He testifies that the defendant showed him the clipping from the "News," concerning this robbery, and that defendant said that he could prove that he was not in it, *but that he got $125 of the money.* This

testimony tends to corroborate the testimony of Kauffman, and also tends to connect the defendant with the commission of the crime, and was properly submitted to the jury.

The seventh assignment of error is that the court erred in not permitting witness Read to answer the following question:

"You may state the character of the defendant's work during the time that he worked for the force; whether it was satisfactory."

This question was objected to by the prosecuting attorney as being incompetent, irrelevant, and immaterial, and the objection was sustained and exception noted. We cannot see the materiality or relevancy of this question. This witness was the chief of police of Tacoma, and had testified that the defendant had been working for the police department for nearly two months. He also testified as to conversations he had with defendant in regard to the Roy Kauffman case; also, as to how he came to be employed by the police department, etc. Witness was allowed to testify fully as to his employment by the detectives and police force, the nature and extent of his employment, etc. This testimony might be relevant and material as tending to show that, if defendant was connected with the burglary in question, it was only as a detective, in order to detect the real criminal; but whether his work was satisfactory or not could be of no materiality whatever, nor have any bearing on the question of his guilt or innocence. If the question was asked for the purpose of showing the good character of the defendant, it was improper, for the rule is that in direct examination the evidence must be confined to general reputation; and that no evidence is allowed of particular acts of good or bad conduct, either to sustain or impeach character. 3 Rice, Evidence, §§ 376, 377, and cases there cited.

The witness Read was called by the appellant, and the testimony sought to be elicited was in his direct examination, and was clearly inadmissible under the rule above stated. Nor can character be shown by evidence of particular acts. *Commonwealth v. Ryan,* 134 Mass. 223.

The evidence of character of a defendant in a criminal case, which is admissible, must be the evidence of his general reputation among the people with whom he lived. Neither evidence of particular acts which would tend to show his character, nor evidence of his real character, is admissible, but evidence of what his neighbors thought of his character. 3 Greenleaf, Evidence (15th ed.), p. 34, note (a).

We fail to see any merit whatever in the eighth assignment of error. It is claimed as error that the court did not allow the appellant, when on the witness stand, to testify as to the statements made by witness Kauffman to him in direct contradiction of the statements previously made by Kauffman when on the witness stand, concerning the holding up of a man named Wurtele. By reference to the statement of facts, it appears that the defendant was allowed to relate the substance of what Kauffman told him concerning this Wurtele "hold up." The only restriction whatever the court made as to this testimony was to witness going into details of the hold up, or "stick up," as the witness called it, but the court did allow him to testify generally as to what Kauffman told him in that connection.

The ninth error complained of by appellant is predicated on the refusal of the court to allow witness Read to answer whether he would believe the witness Kauffman under oath. The defense had called Mr. Read to impeach the witness Roy Kauffman, one of the state's witnesses, as to his truth and veracity; and after the witness had testified that he knew the reputation of Kauffman for truth

and veracity in the community in which he lived, and that it was bad, he was asked the following question:

" State whether or not you would believe him under oath ?"

This was objected to by the state as immaterial, irrelevant, and incompetent; the objection was sustained and defendant excepted to this ruling. The ruling of the court was correct, and the objection was properly sustained. *State v. Miles,* 15 Wash. 534 (46 Pac. 1047).

The tenth error complained of is that the court erred in admitting the testimony of the witness Hobart. This witness was called in rebuttal by the state at the close of the appellant's testimony. A witness named Ashby, a police officer and detective, had testified on behalf of the appellant to the effect that Kauffman, on the evening of the 30th of March, 1899, in the presence of Nevins, a police officer and detective, and a police officer named Thompson, and while he was confined in the jail, the night after his arrest, after being told by the police officer that he would be prosecuted on only one charge, and while there were spread before him articles, the fruits of other burglaries in which he was supposed to have been implicated,—in short, after he had been put through what is known in police parlance as "the sweating process,"—made a confession in which he said he (Kauffman) was the only one engaged in the burglary, and he in no way at that time implicated the appellant. Thompson, Nevins, and the two other officers testified to the same effect. The police officer, Mr. Thompson, describes the "sweating process" through which Kauffman was put in order to obtain a confession, as follows:

" Q. He was arrested, then, something like sixteen or eighteen hours ?

A. Well, yes; something like that.

Q. And who arranged this testimony that you had there on the table to confront him with when he was brought in?

A. Well, I don't know. We came in from this Kauffman's place and set it up there on the desk. I had a bottle or two and Ashby and Mr. Nevins—I think there were four bottles altogether. [The officers had been out and searched Kauffman's residence, and the bottles spoken of had been taken from the Yellowstone saloon, which had been previously burglarized.]

Q. You expected that, confronting him with that testimony, in the presence of three or four of you, that he would break down and confess?

A. We wanted to get the truth out of him.

Q. That is what you were after; you wanted to get him to talk?

A. Yes, sir; we wanted to get a confession from him.

Q. You couldn't get him to talk before that?

A. Not in regard to those safe burglaries; no, sir.

Q. Now, you and Captain Nevins and George Ashby were present?

A. Yes, sir.

Q. And confronted him with all this testimony, and this bolt and that burlap—did you have the hammer?

A. I don't remember that.

Q. But you confronted him with the bolt and burlap? [The bolt was the instrument with which the safe was opened and it had been wrapped in the burlap.]

A. Yes, I went and got them out of the desk, and asked him if he recognized them.

Q. And put him through a proper sweat for about an hour?

A. Yes; we asked him questions for about an hour."

A confession obtained under such circumstances is of very little weight. There is an old saying of "Honor among thieves," and such a confession, under the rule laid down in *State v. McCullum,* 18 Wash. 394 (51 Pac. 1044), would hardly be admissible against Kauffman if he was on trial for the crime confessed. Why, then, should he be

bound by it when testifying as in this case? This confession of Kauffman was reluctantly given. There was nothing to indicate to him that the officers had any knowledge of appellant's connection with the crime, and he, no doubt, thought it best to say nothing about his accomplice. Notwithstanding the alleged confession was of but little weight, yet the testimony of the officers tended to impeach the testimony of Kauffman given on the trial of this action. The witness Hobart was the step-father of Kauffman, and the state called him as a witness to prove that, after the alleged confession to the officers, the witness made to the officer Ashby, and to Mr. McMurray, the deputy prosecuting attorney, and to the witness Hobart, the same statements concerning the burglary, and implicating the appellant, as he testified to on the trial. The appellant was not present and the testimony was objected to as hearsay. The court ruled that, inasmuch as Kauffman's statements on the trial had been impeached by showing that he had made different statements before the trial, the prosecution had the right to introduce sustaining statements made before the trial. Was this error? We think not.

"Where the credit of a witness is attacked upon the ground that he had made statements inconsistent with the statements he had made in court, testimony may be heard to show that at other times and on other occasions the witness had made statements consistent with his testimony given in court." *Dossett v. Miller,* 3 Sneed, 71; 3 Rice, Criminal Evidence, 364.

The rule as above stated has been denied in the case of *Commonwealth v. Jenkins,* 10 Gray, 485, where the accomplice on the preliminary examination had given a different account of the transaction from that he had given on the trial. That court, in ruling on the question, however, says:

" The decision of the point raised in this case is not to be understood as conflicting with a class of cases, in which a witness is sought to be impeached, by cross-examination or by independent evidence, tending to show that at the time of giving his evidence he is under a strong bias or in such a situation as to put him under a sort of moral duress to testify in a particular way. In such case, it is competent to rebut this ground of impeachment and to support the credit of the witnesses by showing that, when he was under no such bias, or when he was free from any influence or pressure, he made statements similar to those which he has given at the trial." *Id.,* 489.

The rule laid down by the supreme court of Massachusetts is perhaps the correct rule, and under it the testimony of Hobart is proper; for it is evident that, when the witness made his statements to the police officers while undergoing "the sweating process," he was not free from great influence and pressure, and his statements were not freely given. *State v. Manville,* 8 Wash. 523 (36 Pac. 470). Hence, we conclude that there was no error committed in receiving the testimony of Hobart.

There was corroborating testimony in this case. A witness named Bradley testified that the appellant confessed to him that he was with Kauffman in the burglary. It is true that this witness was a "jail bird," as he is called in the brief of appellant's counsel, but he was thoroughly cross-examined, and the jury passed upon his testimony, with the other evidence. A witness by the name of Turner also testified that appellant admitted to him that he got one hundred and twenty-five dollars of the money taken, at the time of the burglary. Appellant did not at the time deny that he committed the burglary. He did, however, say he could prove he was not in it. He might have had in mind the alibi which he had prepared in case he should be arrested for the crime, as his words would indicate that he

feared he might be so arrested. The appellant, in his defense, relied upon his own denial of the charge, the breaking down of the testimony of Kauffman, and the proof of an alibi. But the jurors who tried the case heard all the testimony for the appellant. They were witnesses to his actions in the court room and on the witness stand. They were also observers of the demeanor and actions of the witness Marble, who attempted to prove an alibi for appellant, as well as the demeanor and actions of all the witnesses who testified at the trial of the case in the lower court. And it is evident from the verdict they rendered, after deliberating on the evidence, that the jurors, who are the sole judges of the facts, were not only satisfied that appellant's testimony was false, and that the alibi testimony was untrue, but were unanimously convinced that the evidence of Kauffman and the corroboration thereof was true, and that the defendant was guilty beyond all reasonable doubt. The main testimony for the appellant was that of Nevins, Ashby, Read, and Thompson, who were all detectives or connected with the police force of the city of Tacoma, and their testimony was directed mainly to breaking down the testimony of the witness Kauffman. These detectives had been engaged on this case, and the jury undoubtedly found from all the testimony and circumstances that they were interested in showing that Kauffman alone had committed this robbery, and that the confession these detectives extorted from Kauffman while they had him in the "sweat box" was not true, but that Kauffman told the truth when upon the witness stand. The interest of these detectives is apparent. They had made up their minds that Kauffman committed this robbery, and, to show that their judgment was correct, they were interested in seeing the defendant acquitted. Courts recognize the fact that testi-

mony of this kind is very unreliable, and the jury was perfectly justified in not believing it.

On the question as to whether there is sufficient evidence to sustain the verdict, the rule is that, although the evidence in a criminal case may not have been of the most satisfactory and convincing kind, the verdict of the jury should not be disturbed on appeal, where there was evidence tending to show every material fact necessary to show the guilt of the defendant, and particularly so when the court who tried the case has refused to interfere with the verdict. *State v. Manville, supra; State v. Murphy,* 15 Wash. 98 (45 Pac. 729); *State v. Kroenert,* 13 Wash. 644 (43 Pac. 876); *State v. Elswood,* 15 Wash. 453 (46 Pac. 727).

This court, in a recent decision, *State v. Maldonado,* 21 Wash. 653 (59 Pac. 489), used the following language:

"An examination of the evidence in the case impresses us with the fact that it was not very strong, and that the jury might reasonably, in the opinion of this court, have found the defendant not guilty; but there was sufficient evidence, if uncontradicted, to warrant the jury in bringing in a verdict of guilty, and, the jury being the tribunal upon which, by our laws and constitution, is especially imposed the duty of weighing the testimony, and having so weighed the testimony, and found against the defendant, it is not the province of this court to disturb its verdict."

We think the court below properly overruled the motion for a new trial.

For the reasons given, the judgment of the lower court is affirmed.

DUNBAR, C. J., and ANDERS, REAVIS and FULLERTON, JJ., concur.