352 P.2d 705

**STATE of Arizona, Appellee,**
v.
**Crosby G. HOLDEN, Appellant.**

No. 1143.

Supreme Court of Arizona.

May 11, 1960.

Leon S. Jacobs and Flynn & Allen, Phoenix, for appellant.

Wade Church, Atty. Gen., Jay Dushoff, Asst. Atty. Gen., Neal Roberts, Sp. Asst. Atty. Gen., and Charles C. Stidham, County Atty. of Maricopa County, Phoenix, for appellee.

JOHNSON, Justice.

This is an appeal by the defendant Crosby G. Holden from a judgment of conviction and sentence in two criminal actions which had been consolidated for trial. The convictions were for the presentation of a false claim to the State Treasurer in the sum of $8,700 and for conspiring with one Sam Deutsch to commit grand theft in the same amount.

The facts are that defendant was appointed chief right of way agent for the Arizona State Highway Department on January 15, 1955 and continued to occupy that position until his discharge on November 13, 1957. During the month of January 1957 a claim was made to the Arizona Highway Department by a party purportedly named John S. Rogers claiming payments for land deeded to the Highway Department for right of way purposes and demanding payment therefor in the sum of $8,700. The evidence clearly reveals that John S. Rogers was a fictitious person and the land purportedly deeded was the property of one Emory Hurley. The claim was approved by the Highway Department and through proper channels reached the State Auditor who issued a state warrant in that sum in honoring said claim. This warrant came into the hands of one Sam Deutsch. The latter admitted that he endorsed the warrant in the name of John S. Rogers and deposited the same in a fictitious bank account. Thereafter, the warrant, following banking customs, was presented to the State Treasurer and was paid.

The falsity of this claim was later discovered and a number of charges was preferred against defendant, and Sam Deutsch, and one Kelly Moore, a former chief right of way agent for the State Highway Department. Disposition has previously been made of all of said charges except the two involved herein.

Defendant has assigned four errors each of which he claims to be so grievous as to require a reversal of said judgment of conviction. We will consider them in the order which seems most appropriate. The first assignment charges that: The court erred in failing to grant defendant's motion to quash Count II of information No. 32171 upon the grounds that the same had been refiled without leave of court. Defendant asserts that this may not be done without leave of court when the same charge has been previously dismissed upon a motion to quash.

The record discloses that the county attorney first filed a complaint against defendant in the justice court charging him with filing a false claim with the Arizona Highway Department. The defendant was held to answer and the information contained the same charge. Upon motion of defendant the information was quashed, and correctly so because it clearly did not charge a public offense for the very simple

reason that the State Highway Department is not "* * * a board or officer authorized to pay them (the claim here involved) when genuine, * * *." Under the provision of A.R.S. § 13–317 the claim must be presented to a board or officer authorized to pay such claim.

The county attorney later without leave of court, filed another complaint against defendant properly charging that the claim was presented to and paid by the State Treasurer which did state a public offense. The defendant was held to answer to the superior court on the latter complaint and the information is here under attack for the reasons stated above.

Specifically defendant contends that 17 A.R.S. Rule 175, Rules of Criminal Procedure, denies to the county attorney the authority to file a new complaint based upon the same offense after the information has been quashed or set aside by the trial court without leave of such court. He cites State v. Phillips, 27 Ariz. 349, 233 P. 586, as authority for his position. We do not think the above case is authority for defendant's contentions in the instant case. That case was based upon an entirely different statute than that upon which the instant case is controlled.

As pointed out by the State, the Phillips case, supra, was controlled by the provisions of Section 978 to 988 found in Chapter I of Title VIII of the 1913 Penal Code

entitled "Demurrer." Section 984 thereof specifically provided that:

"If the demurrer is allowed, the judgment * * * is a bar to another prosecution for the same offense, unless the court, * * * directs a new information to be filed; * * *."

When the Rules of Criminal Procedure were adopted in this jurisdiction demurrers were done away with and defects in information or indictments were thereafter taken by motions to quash. Rule 168. Rule 176, A.R.S. Rules of Criminal Procedure expressly provides that:

"An order sustaining the motion to quash is not a bar to another prosecution for the same offense unless the motion was based on the grounds specified in Rule 169 * * *." (None of the exceptions listed are applicable here.)

It is therefore clear to us that the county attorney was wholly within the authority of Rules 176 and 177, Rules of Criminal Procedure, in filing a new complaint against defendant without first procuring an order from the court to do so. See, State v. King, 66 Ariz. 42, 182 P.2d 915; State v. Freeman, 78 Ariz. 281, 279 P.2d 440; State v. Freeman, 78 Ariz. 291, 279 P.2d 446; State v. Coursey, 71 Ariz. 227, 225 P.2d 713.

Defendant's second assignment is that: The court erred in allowing the witness

(Governor) Ernest W. McFarland to testify to a purported confession without a proper foundation that the same was freely and voluntarily given without threats or promise of immunity.

■ This court in the recent case of State v. Pulliam, Ariz., 349 P.2d 781, 783, held that whenever a confession is offered in evidence the burden is on the prosecution to lay a prima facie foundation for its introduction by preliminary proof showing that it was freely and voluntarily made and that unless a confession was freely and voluntarily made it was not entitled to admission in evidence. We further held in the Pulliam case that:

"The rule is well settled in this state that whether a confession is voluntary or not is a preliminary question of law and fact for the trial court to determine in the first instance upon a preliminary investigation into the facts and circumstances surrounding the taking of the confession."

The facts and circumstances surrounding the taking of the confession complained of in the present action are as follows: About November 13, 1957, Ernest W. McFarland, then Governor of the State of Arizona, and Robert Morrison, then Attorney General of the State, and a member of the Board of Pardons and Paroles, requested that the defendant be brought to the office of the Governor. The defendant was taken to the office of the Governor by the Secretary of the Highway Commission, at which time there were present besides the Governor and the Attorney General, three members of the Governor's staff. The defendant was there interrogated by the Governor and the Attorney General concerning a "John S. Roger claim" and a "John S. Roger warrant", and denied that he had in any way been a party to an attempt to defraud the State and denied any guilty knowledge of the transaction, admitting only that being the head of the particular department involved, it would be his responsibility for what had occurred.

Attorney General Morrison then requested the Governor to permit him to "talk to Mr. Holden privately"; the defendant was taken by the Attorney General to a private room for approximately fifteen minutes. Upon returning, the Governor's staff was requested to leave, and the Attorney General advised the defendant to "Well, just go ahead and tell the Governor in your own words." The defendant then gave his confession to the Governor.

At the trial the Governor was called to testify to the above matters and after relating the first conversation wherein the defendant denied any guilt, and after testifying that the Attorney General and the defendant had a private talk for some fifteen minutes, the Governor was asked to relate the second conversation, which was objected to by the defendant upon the

grounds that the State had failed to show that the alleged confession was freely and voluntarily given because of the fifteen-minute interval spent in a private talk with the Attorney General. The Attorney General, who was sworn as a witness, was not called to testify to the private conversation with the defendant, and the trial court permitted the Governor to testify to the purported confession.

We find no excuse whatever for the State's counsel to permit this point to reach this Court in its present condition as the question was raised at the trial and Attorney General Morrison had been sworn as a witness at the beginning of the trial, and was available to cure the alleged defect in laying the foundation for such evidence. The State's Attorney, in the absence of the jury, could have called Morrison to testify to what transpired in the room with the defendant, and if no promises or threats were made to the defendant, a prima facie foundation for the introduction of the confession could have been made.

While it appears from the record that Governor McFarland testified that defendant's statements to him were freely and voluntarily made and that the Governor carefully warned defendant that anything he said could be used against him, nevertheless, it is apparent that the Governor had no knowledge of what transpired between the defendant and the Attorney General

in their "private talk" only minutes before. We can only surmise what took place during this interval of fifteen minutes, but the record is clear that the defendant in that short period of time changed from a complete denial of guilt to a full confession of the accusations.

In determining whether the State has laid a sufficient foundation for the admission of a confession in evidence it is necessary as we said in the Pulliam case, supra, to consider all the facts and circumstances surrounding the taking of the confession. This, of course, should include all that occurred immediately prior to and at the time of the making of the confession. Under the decisions of this Court confessions are prima facie involuntary, and the burden is on the State to show that the offered confession was freely and voluntarily made before it is admissible in evidence; and until such a prima facie showing is made there is no duty on the part of the defendant to go forward with the evidence to rebut the prima facie foundation.

It is our view under the circumstances as outlined above that the burden of proof placed upon the State to show that the confession was voluntary, included laying a prima facie foundation of what took place between the Attorney General and the defendant while closeted together for fifteen minutes in a private room, as

well as the circumstances immediately thereafter resulting in the defendant making a complete confession to the Governor. These events were so closely related in point of time as to constitute one event, and the State's preliminary proof should have covered both.

We conclude that under the prior decisions of this Court as outlined in State v. Pulliam, supra, that the trial court committed reversible error in permitting the confession of the defendant's in evidence.

Defendant further contends: The Court erred in refusing to grant defendant's motion for a mistrial when it was revealed that one of the jurors had read to herself and other jurors portions of the volume on California Jury Instructions in Criminal Cases after argument of counsel and before submission of the case.

The brief of defendant states and the record shows that the juror read said instructions before final argument *and not after* as it is stated in the assignment. This is perhaps of little significance, if any. It was error for the juror to read from a volume of California Instructions on Criminal Law and to read portions thereof to other members of the jury. The verdict of a jury should be based upon the evidence as it falls from the lips of the witness and the law as given it by the Court.

The question, however, presented to the trial court for its determination on defendant's motion for a mistrial was whether the defendant was prejudiced thereby. Counsel for defendant with commendable frankness have quoted from Young Chung v. State, 15 Ariz. 79, 136 P. 631, 636, the following:

"* * * We think these authorities support the proposition that prejudice must be shown or sufficient ground must appear for presuming prejudice to authorize interference with the verdict on account of such matters. * * *"

The juror thus guilty of the misconduct testified under oath that:

"A. The ones I read I thought made me more considerate than I ever considered cases before.

"Q. But you feel you didn't carry that with you? A. Yes, I think I remember it; and I especially wanted to be fair."

The only inference which can reasonably be drawn from the above statement of the juror is that she was not only not prejudiced thereby, but that she was more considerate and more fair to the defendant than she otherwise would have been. She stated one particular thing she got from reading the instruction book was:

"Not to make up our minds until we get up there and discuss the case; that is the most important thing I remember now. I remember the words

'Until the matter is finally handed to you for consideration.' That is what sticks in my mind about that, and the hope that no one would be emphatic at the outset."

These instructions were not discussed in the jury room. The only reference made to the incident in the jury room was by Mr. Fish who facetiously remarked that Mrs. McGuire was a student of law. Mr. Fish did not read any of the California Instructions and did not believe Mrs. McGuire read any portion of them to him. The only other jurors who are supposed to have been present when Mrs. McGuire was reading the instruction book were the three alternate jurors, neither of whom participated in the deliberations of the jury.

From the above it is quite clear that the trial court was justified in denying the motion for a mistrial as no prejudice was shown to have been created in the minds of the jurors against defendant as a result of the action of Mrs. McGuire, nor do any grounds appear for presuming prejudice. While it was error for the juror to read the California Criminal Instructions as related by her, it was harmless error.

Defendant further contends: The court erred in refusing to allow defendant to cross-examine the witness Sam Deutsch concerning other illegal transactions with other persons to establish motive, interest and bias of Sam Deutsch.

After the selection of the jury, and before the presentation of any evidence, a co-defendant, Sam Deutsch, entered a plea of guilty to two counts of conspiracy and several other counts against him were dismissed. Deutsch then turned State's evidence and testified on behalf of the prosecution. Sentence was not imposed upon the defendant Deutsch, but was continued until a future date.

Defendant Deutsch was called as the State's first witness and testified that he and the defendant Holden had committed the crimes charged in the information; and that he had signed all the warrants obtained from the State and cashed them and divided the proceeds with the defendant Holden.

Defendant attempted to establish on cross-examination that Deutsch had frequented the office of the chief right of way agent during the time one Kelly Moore was such agent and that Moore and Deutsch had engaged in illegal transactions and Holden had caught them doing it, however, the trial court sustained objections to this line of cross-examination and admonished defendant from further pursuing such questions. Thereafter in the absence of the jury, counsel for defendant, in order to complete his record, and we think properly so, submitted to the court, a writ-

ten pleading entitled "Proposed Questions on Cross-Examination of State Witness Sam Deutsch and Offer of Proof."[1] This consisted of twenty-one proposed questions concerning Deutsch's dealings with one Kelly Moore and the State Highway Department. The defendant attempted to prove and offered to prove by these questions on cross-examination of Deutsch that:

I.   "Proposed Questions on Cross-Examination of State's Witness Sam Deutsch and Offer of Proof

"1. Have you been involved in other illegal transactions concerning the State of Arizona and the Arizona Highway Department other than the three you have testified about?

"2. Have you been involved in transactions similar to the three you have testified to in this case?

"3. What were the names of the transactions and whom did they involve?

"4. Were you involved in similar illegal transactions with other persons?

"5. As in fact, Mr. Deutsch, you and Mr. Kelly Moore were involved in at least two illegal transactions exactly similar to the three which Mr. Holden is now charged with during the time Mr. Moore was the Chief Right-of-Way Agent.

"6. As a fact, Mr. Deutsch, you and Kelly Moore, while Mr. Moore was Chief Right-of-Way, prepared a fictitious claim in the name of George Peterson exactly like the three claims you have testified about.

"7. As a fact, Mr. Deutsch, Mr. Moore signed the warrant issued to George Peterson and delivered the same to you, and you deposited it in your stock account in Hemphill and Noyes exactly as you say Mr. Holden and yourself handled the Torrez warrant.

"8. As a fact, Mr. Deutsch, you and Mr. Kelly Moore maintained a joint trust account in the Arizona Title & Trust Co.

"9. That the purpose of this trust account was to deposit therein illegal payments received in land transactions by you and Mr. Moore and to share in them.

"10. That you and Mr. Moore engaged in several illegal transactions besides the ones already mentioned here.

"11. That Mr. Holden learned of at least two of your illegal transactions while he was Chief Right-of-Way Agent and compelled yourself and Mr. Moore to sell the land to the State for a loss.

"12. Specifically, a lot on Buckeye Road which, in anticipation that the State would acquire it for highway purposes you and Mr. Moore purchased for $12,000, and when Mr. Holden found out, he forced you to sell it to the State for $8,000, or a loss of $4,000.

"13. In another transaction between Mr. Moore and yourself, in anticipation of the State needing the land, you jointly purchased it, and when Mr. Holden learned of it, he took you to the deputy Attorney General, Mr. Roy Langmade, and you were forced to deed the land to the State at a loss.

"14. It is a fact that yourself and Kelly Moore prepared these claims and warrants and presented them, not yourself and Crosby Holden.

"15. That you used your friendship with Crosby Holden and Kelly Moore's knowledge of right-of-way transactions to get these claims put through?

"16. That it was done without Mr. Holden's knowledge or consent?

"17. That when he (Holden) found out about John S. Rogers, he warned the two of you and said he would cover it up for you, and that if you would put the money back in the bank, he would try to return it for you?

"18. Isn't it a fact that you loaned Mr. Moore $10,000 and held the mortgage on his property at the time you were charged?

"19. Isn't it a fact that you presently hold Kelly Moore's note for approximately $12,000?

1. Deutsch was attempting to shift the blame to defendant to mitigate his own punishment; 2. Deutsch had considerable animosity towards defendant because defendant had forced Deutsch and Moore to suffer losses on other highway right of way transactions; 3. That Deutsch was by his testimony attempting to "get even" with defendant; and 4. That Deutsch, by shifting the blame to defendant, was attempting to protect Moore, who was a close friend and associate of Deutsch; and 5. For the purpose of impeaching the testimony of Deutsch.

"20. Isn't it a fact that in some manner you and Mr. Moore prepared each of these claims, processed them, cashed the warrants and divided the proceeds, all without the knowledge and consent of the defendant Crosby Holden?

"21. Counsel proposes to question Mr. Deutsch as to defendant's exhibits 1, 2, 3, 4 and 5 to test his memory, his veracity, and his bias and motives.

"The purpose of the foregoing questions is to show the motive and interest of the witness, his knowledge of the Right-of-way Department, his bias, his relationship to these crimes, his method of operation, and all persons connected with it, together with his lack of fairness and lack of impartiality, and that it is another person, not the defendant, who is guilty along with Mr. Deutsch of these crimes; also to prove plan, scheme and design on the part of Mr. Deutsch for the further purpose of impeaching Deutsch.

"Offer of Proof

"The defendant Holden, by the foregoing questions, is offering to prove that the witness Deutsch had on prior occasions committed exact, similar crimes not involving the defendant Holden but in fact involving his predecessor, Kelly Moore, for the purpose of rebutting the inference in the prosecution's opening statement that it would prove Mr. Holden is guilty by proving that he was the chief right-of-way agent. In proof of these facts, the defense will prove by the State Examiner, Mr. A. L. Means, that the transaction involving David Elias and George Peterson are fictitious transactions, that they are exactly like the three transactions which Mr. Holden is accused of. That these transactions occurred when the defendant Holden was not the chief right-of-way agent, that they were approved by Kelly Moore. That defendant's Exhibits 1, 2, 3, 4, and 5 marked for identification are the false claims involved in the George Peterson and David Elias transactions. Further, the defendant Holden proposes to prove that the name George Peterson was forged to a claim and warrant by Kelly Moore with the knowledge and consent of Sam Deutsch, that Sam Deutsch deposited the same in the Hemphill & Noyes account, and in support of this offer the defense will offer in evidence the account ledgers of Sam Deutsch with Hemphill & Noyes and the testimony of one of the State's expert witnesses, Joe Nemechek, who has previously testified under oath at a preliminary hearing that it is his opinion as an expert witness that Kelly Moore signed the fictitious name to the George Peterson claims and warrant which are defendant's Exhibits 3, 4, and 5 marked for identification.

"Theory of Defendant's Case

"It is the defendant's theory of the case that Sam Deutsch and Kelly Moore since 1952 have been involved in illegal transactions concerning State funds, the filing of false claims, and securing land with advance knowledge that it was to be required by the State for right-of-way purposes; that this situation prevailed between Deutsch and Moore until 1955 when Mr. Holden replaced Mr. Moore and uncovered two of these transactions between Deutsch and Moore and threatened to expose them unless they sold the land required by the State to the State for a fair sum, which amount was less than

The trial court sustained objections to all of the proposed questions with the exception of four which defendant then declined to ask the witness Deutsch.

■ The rule is well settled in this jurisdiction that a cross-examiner should be given great latitude in his questions which seek to impeach an adverse witness being examined and it is always proper to inquire as to the motive of the adverse witness in testifying and to show any matter which bears on the credibility of that witness. State v. Rothe, 74 Ariz. 382, 249 P.2d 946. And a party against whom a witness is produced has a right to show everything which may in the slightest degree affect his credibility. Fuller v. State, 23 Ariz. 489, 205 P. 324. Of such cross-examination, speaking through Phelps, J., this Court said in State v. Aldrich, 75 Ariz. 53, 251 P.2d 653, 657:

"It is the law that a defendant in a criminal case should be given wide latitude in cross-examining his prosecutor for the purpose of showing motive, bias or prejudice. (Citing cases.)" See Annotation 62 A.L.R.2d 610.

■ We recognize that great latitude should be allowed in the cross-examination of an accomplice or co-defendant who has turned State's evidence and testifies on behalf of the State on a trial of his co-defendant. State v. Steele, 226 Mo. 583, 126 S.W. 406; State v. Ritz, 65 Mont. 180, 211 P. 298; State v. Pellet, 53 N.D. 183, 204 N.W. 983; State v. Rose, 339 Mo. 317, 96 S.W.2d 498; State v. Coates, 22 Wash. 601, 61 P. 726; People v. Durand, 321 Ill. 526, 152 N.E. 569; People v. Schmitz, 7 Cal.App. 330, 94 P. 407, 419, 15 L.R.A.,N.S., 717; State v. Jackson, 227 La. 949, 81 So.2d 5. See 58 Am.Jur., Witnesses, Sec. 655 p. 362, 98 C.J.S. Witnesses. § 401 p. 195. The statement of Ross, J., in Gibbs v. State, 37 Ariz. 273, 293 P. 976, 978, 74 A.L.R. 1105, well expresses the rule in this jurisdiction wherein it was said:

Deutsch and Moore had paid for it, causing them to suffer a loss; that subsequent to this, Mr. Deutsch and Mr. Moore conspired to defraud the State and to get even with Crosby Holden by using Mr. Deutsch's friendship with Mr. Holden and Mr. Moore's knowledge of the operations of the highway Department to process and cash the claims and warrants referred to as Rogers, Torrez and Davis; that Mr. Deutsch is covering for Mr. Moore and deliberately blaming Mr. Holden, to save himself from as much

punishment as possible. Further, that Deutsch and Moore maintained joint accounts solely for the purpose of illegal gains. That no such account ever existed as to Crosby Holden and Sam Deutsch; that Sam Deutsch gave expensive gifts to Kelly Moore and loaned him moneys as high as $10,000 but never gave such gifts or loans to Crosby Holden. Further, that the defendant is informed that Mr. Deutsch has confessed to at least part of the foregoing facts."

" * * * We think it is always competent to show the interest of a witness for the purpose of ascertaining his leanings or disposition or wishes, and that it is especially competent when the witness is an accomplice and has been promised immunity in case he testifies against his coaccomplice. * * * "

The general rule on the subject is stated in Vol. 3, Wharton's Criminal Evidence (11th Edition) Section 1297, as follows:

" * * * The accused has the right freely to cross-examine an accomplice testifying for the state as to his motives, bias, interest, relation to the crime, the persons connected with it, and other matters tending to impeach his fairness or impartiality. * * * Great latitude, from the nature of the case, is allowed in the cross-examination of an accomplice, and the most searching questions are permitted in order to test his veracity. * * * "

While it is true that the extent of such cross-examination is within the sound discretion of the trial judge; nevertheless, if the trial judge has excluded testimony which would clearly show bias, interest, favor, hostility, prejudice, promise or hope of reward, it is error and will be ground for a new trial. Alford v. United States, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624; Gordon v. United States, 344 U.S.

414, 73 S.Ct. 369, 97 L.Ed. 447; State v. Aldrich, supra. State v. Haddad, 221 La. 337, 59 So.2d 411.

The defendant submitted to the trial court at the same time of presenting the questions he proposed to ask the witness Deutsch on cross-examination, a statement of the purpose of the such questions, as follows:

" * * * is to show the motive and interest of the witness, his knowledge of the Right-of-way Department, his bias, his relationship to these crimes, his method of operation and all persons connected with it, together with his lack of fairness and lack of impartiality, and that it is another persons, not the defendant, who is guilty along with Mr. Deutsch of these crimes; also to prove plan, scheme and design on the part of Mr. Deutsch, for the further purpose of impeaching Deutsch."

We have carefully examined each of the twenty-one questions proposed by the defendant, and with very few exceptions, conclude that the questions are framed either for the purpose of testing the credibility of witness Deutsch or to investigate the situation of the witness with respect to the parties involved in the alleged fraud connected with the securing of highway right-of-ways, and particularly to reveal to the jury any bias, interest, hostility,

prejudice and motive that such witness may have for testifying against his co-defendant.

■ The contention of the state that the trial court properly excluded several of the proposed questions submitted by the defendant because they related to alleged acts of misconduct by the witness Deutsch which had not resulted in convictions is clearly answered by our recent decision of State v. Little, 87 Ariz. ——, 350 P.2d 756, 759, wherein we said:

> "Evidence offered to impeach the credibility of a witness by showing that he has a motive to testify on behalf of the State or against the defendant is generally admissible as proper cross-examination whether such evidence also tends to prove that the witness has committed acts in violation of the law. * * *"

We deem it unnecessary to set out the specific questions (see footnote 1, supra) the defendant proposed to ask on cross-examination of witness Deutsch, which demonstrate whereby defendant was deprived and restricted of freely interrogating the witness as to his motives, bias and interest. Suffice it to say that the defendant was not permitted to elicit testimony as to whether defendant had learned of at least two illegal transactions while he was Chief Right-of-way Agent that compelled witness Deutsch and Kelly Moore to sell land they had acquired to the State for a financial loss; that defendant learned of another transaction where witness Deutsch and Kelly Moore had purchased land, knowing that the State would need the land, and forced Deutsch and Moore to deed the land to the State at a loss; whether or not witness Deutsch was involved in similarly illegal transactions with other persons, particularly Kelly Moore; whether the plan and scheme testified to by witness Deutsch to defraud the State was employed by witness Deutsch and Kelly Moore, instead of with the defendant and the refusal of the trial court to permit defendant to question such witness as to certain exhibits to test his memory, veracity and motives.

■ A defendant in a criminal prosecution has an absolute right to cross-examine an adverse witness, and if at all within the proper bounds, such right may not be unduly restrained or interfered with by the trial court. This is especially true in the cross-examination of an accomplice. Gibbs v. State, supra. In the instant case the proposed questions to be propounded on cross-examination of the witness Deutsch, an admitted accomplice, were for the purpose of showing the probability of interest and bias and a motive of such witness for testifying against the defendant. In accordance with the rule of law set forth above that very great latitude should be allowed in the cross-examination of an ac-

complice we believe the trial court abused its discretion in restricting and limiting the cross-examination of this witness and that the defendant was deprived of a fair and impartial trial. State v. Aldrich, supra.

The State seeks to invoke the rule that no case will be reversed because of technical errors not amounting to a deprivation of substantial justice. A.R.S. Const. Art. 6, Sec. 22. We are of the opinion that before a conviction of a criminal offense may be sustained, it is necessary that the constitutional and statutory provisions which outline the procedure to be followed, must be complied with, and it cannot be said that guilt has been established in accordance with law if the accused has been denied any of the rights guaranteed to him by the Constitution and statutes of this State. State v. Thompson, 68 Ariz. 386, 206 P.2d 1037. We firmly believe that the errors committed during the course of this trial were so prejudicial to the defendant that he was not accorded that fair and impartial trial guaranteed to him by the Constitution and laws of this State.

For the reasons given in this opinion, the judgment of conviction is reversed and the cause remanded for a new trial.

STRUCKMEYER, C. J., and BERNSTEIN, J., concur.

UDALL and PHELPS, Justices (dissenting).

We are firmly of the opinion defendant received a fair and impartial trial and that hence the judgment of conviction should be affirmed.

The reversal, by our brethren of the majority, rests upon two grounds: First, the admission into evidence of the confession. The majority hold it to have been reversible error for the trial court to permit Governor McFarland to testify before the jury to the confession made in his presence by the defendant for the reason that a proper foundation had not been laid.

The governing principles of law with reference to the necessary steps, preliminary to the admission of a confession, are well settled in this jurisdiction—our latest expression thereon being State v. Pulliam, Ariz., 349 P.2d 781. While the burden was on the State to prove the confession was voluntary, all it needed to do, initially at least, was to make a prima facie case. This was done. Certainly the learned trial court concluded that this preliminary question of law and fact was established to its satisfaction. It is our considered opinion that the testimony adduced was amply sufficent to sustain such a finding. While it doubtless would have been the safer practice for the prosecution to have called the Attorney General to relate what occurred in his private interview with defendant, still as a matter of law, in our opinion, it was not

fatal for the State to fail to do so. At that stage, faced with a prima facie showing, the defendant had some responsibility if he hoped to have the confession excluded. It must be remembered a preliminary hearing on this matter was being held in chambers—out of the presence of the jury—hence, if the claim of error now asserted was being made in good faith the defendant could—without jeopardy to himself—have testified to the court and shown what promises or threats were made as an inducement to his confession. This he did not do.

The means were equally available to both the State and defendant preliminarily to present to the trial court the issue of fact, if there was one, whether defendant's confession was freely and voluntarily made. No such issue of fact was presented to the court and it did the only thing it could do, that is, admit the confession in evidence and submit to the jury, under proper instructions, the question of whether it was freely and voluntarily made. Zuckerman v. People, 213 Ill. 114, 72 N.E. 741. This was in strict compliance with our holdings in Galas v. State, 32 Ariz. 195, 256 P. 1053; Kermeen v. State, 17 Ariz. 263, 151 P. 738, and State v. Thomas, 78 Ariz. 52, 275 P.2d 408.

It is noteworthy that the Chief Executive—an experienced lawyer in his own right—went the second mile in warning defendant of his rights when he said:

"Crosby, you realize that things you are saying now could be used against you in court, and do you now want to make that statement, realizing that it could be used against you?
Defendant answered:

"Yes, it is the truth; and you don't know what a load it is off of my mind and what a load I have been carrying."
Certainly no undue advantage was taken of defendant. The objection now urged, we feel, is supertechnical, and without substance.

Secondly, the restrictive cross-examination of Sam Deutsch who was charged jointly with defendant in the case before the court is held to be reversible error. Counsel for defendant presented to the trial court twenty-one written questions to be asked Deutsch on cross-examination for the avowed purpose of refuting the opening statement to the jury by counsel for the State, to wit: "that it would prove Mr. Holden guilty by proving that he was the chief right-of-way agent." The statement of counsel, of course, is not evidence—neither is it a correct statement of any rule of evidence. Upon motion such a statement would no doubt have been stricken, but it is not subject to refutation by cross-examination of a codefendant or accomplice or anyone else until evidence is introduced to support it. Later counsel asked leave to add that he proposed to ask said ques-

tions for the purpose of impeachment. This request was granted.

The questions largely consisted of inquiries into similar crimes claimed to have been committed by Deutsch and one Kelly Moore which occurred more than two years previous to the date of the crime charged in the instant case. Holden succeeded Moore as chief right-of-way agent in January 1955 and he was charged with presenting the false claim involved here in January 1957.

The court, in the absence of the jury, ruled that four of the 21 questions could be asked and answered but that the remaining 17 questions were improper. Petulantly, counsel for defendant then did not choose to even ask the four questions. In other words, his actions amounted to a withdrawal of approved questions 14, 16, 17 and 20.

We believe the reasonable inference to be drawn from the attitude of counsel for the defense is that if he could not propound all of the 21 questions he would not propound any. The four questions the court offered to permit him to ask were direct inquiries as to whether it was not a fact that he and Kelly Moore actually committed the crime for which Holden was then being tried. The majority of the 21 questions were, in our view, clearly not admissible for any purpose. There were however three or four questions, in addition to the ones to which the court offered to permit answers which should have been allowed by the court touching upon the animus of Deutsch toward Holden and although it was error not to allow them to be asked, it was not reversible error in our opinion to refuse it.

We have no quarrel with the rule stated by the majority that counsel for defendant should be given a wide latitude in the cross-examination of a codefendant in a criminal case who has turned State's evidence against defendant, but we do not agree with the application of the rule as the majority seek to apply it in this case. Certainly it cannot be construed as a license to violate well-established rules of evidence. Impeachment must be bottomed upon something more substantial than the insinuations of the cross-examiner; nor can it be used to throw suspicion upon someone not before the court.

Our Constitution, Art. 6, § 22 provides that:

" * * * No cause shall be reversed for technical error in pleading or proceedings when upon the whole case it shall appear that substantial justice has been done."

We believe no one can read the uncontradicted record of "skulduggery" disclosed in this case without concluding that substantial justice has been done. The judgment therefore should be affirmed.