512 P.2d 590

**STATE of Arizona, Appellee,**

v.

**Raymond Teague TAYLOR, Appellant.**

No. 2374.

Supreme Court of Arizona,
In Division.

July 18, 1973.

Gary K. Nelson, Atty. Gen. by Peter M. Van Orman, Asst. Atty. Gen., Phoenix, for appellee.

Flynn, Kimerer, Thinnes & Galbraith by John J. Flynn, Tom Galbraith, Phoenix, for appellant.

STRUCKMEYER, Justice.

The defendant, Raymond Teague Taylor, was tried by jury and convicted of two counts of violating A.R.S. § 13–652, lewd and lascivious acts. From the judgments and sentences thereon, he appeals.

■ The evidence upon which the jury convicted was the uncorroborated testimony of a 12-year-old male, hereinafter called the complaining witness, who testified that defendant committed certain acts of fellatio upon him. By A.R.S. § 13–136, it is provided that a conviction may not be had on the uncorroborated testimony of an accomplice. Defendant urges that the complaining witness was an accomplice and, as such, his testimony must be corroborated.

The State's position is that the complaining witness was at the time of the commission of the acts a child without knowledge of the wrongfulness of the acts. By A.R.S. § 13–135, children under the age of fourteen years, in the absence of clear proof that at the time of committing an offense they knew of its wrongfulness, are incapable of committing a crime. And it is argued that under the evidence the complaining witness could not be an accomplice whose testimony required corroboration, cf. State v. Howard, 97 Ariz. 339, 400 P.2d 332 (1965).

The testimony of the complaining witness, if believed, amply supports the jury's verdict. He testified:

"Q * * * Now, when you participated in this activity with the defendant and also with M_____, did you know it was wrong to do that?

A Well, no.

Q Did you know that you could be arrested for doing that?

A No.

* * * * * *

Q * * * is it your statement that you didn't know what you were doing was wrong?

A I didn't know what I was doing was, no.

* * * * * *

Q In reference to your statement that you didn't know that these acts were wrong, did you know that they were right?

A No.

Q You didn't know?

A Well, I wasn't sure; I really didn't know.

Q Well, did you feel it was morally right to do this type of thing?

A I didn't know.

Q You do, or you are aware that, or at that time I am sure you were aware that certain things were in violation of the law; is that a fair statement to say?

A You mean what I thought, some of these things I was doing was against the law?

Q Yes.

A No.

* * * * * *

Q Well, so I have it straight in my own mind, you didn't necessarily know it was right; is that right?

A Yes.

Q And you didn't necessarily know it was wrong?

A I just didn't know, period.

* * * * * *

Q Had your parents ever told you at any time that sexual acts committed, especially with other people, were wrong?

A What do you mean by other people?

Q Well, other than yourself, other than things that you would to [sic] to yourself for sexual excitement.

A Well, I suppose it was explained as far as the opposite sex, but I don't think it's the same.

Q In other words, that during that period of time you knew it was wrong to do things sexually with the opposite sex?

A  Yes.

Q  But you didn't necessarily know it was wrong to do things with the same sex?

A  Right.

Q  You'd never been told that?

A  Well, it's—I mean—just, I guess they sort of understood I wasn't supposed to, or something.  It was never mentioned.

Q  Had anyone, had your parents told you that you shouldn't do things of a sexual nature with other men or boys?

A  No.

*      *      *      *      *      *

Q  Did they [his parents] ever talk to you about sexual activities with males?

A  Not that I can recall.

Q  So that at the time in question, when these activities took place with the defendant, you did not know they were wrong; is that correct?

A  Yes."

Defendant argues that it is absurd to say that the complaining witness did not know that the acts which he described were improper.  This argument is more properly addressed to a jury than to an appellate court, the court below having properly instructed the jury as to the weight and credibility to be attached to the witness' testimony.

■  Defendant complains that because there was no corroboration of the complaining witness' testimony, it was error to instruct on the necessity for corroboration of an accomplice's testimony.  Defendant's complaint is without merit.  At a recess shortly before the conclusion of the trial, the record shows that the following occurred:

"THE COURT: Let the record show that the defendant has not tendered the Court with any formal written requested instructions;  however, requests the Court to give an instruction relative to character and reputation of the defendant * * *.

Also, the defendant requests that the Court instruct the jury relative to testimony of the accomplice must be corroborated.

*      *      *      *      *      *

The Court will grant defendant's request relative to character and reputation of the defendant, testimony of accomplice must be corroborated."

We hold that the instructions requested in the trial court by a defendant are not thereafter grounds for assignment of error.

■  Defendant complains that the trial court, in instructing the jury in the language of A.R.S. § 13–135, placed the burden upon him to establish by clear proof that the complaining witness knew the wrongfulness of his acts.  The short answer to the defendant's complaint is that no objection in this respect was made at the trial or thereafter on motion for a new trial.  Errors in instructions to which no objections are made will be considered as waived.  State v. Wheeler, 108 Ariz. 338, 340, 498 P.2d 205, 207 (1972);  State v. Peats, 106 Ariz. 254, 255, 475 P.2d 238, 239 (1970).

■  Nor do we find that the court's instructions constituted fundamental error.

A.R.S. § 13–135 provides:

"All persons are capable of committing crimes except:

1.  Children under the age of fourteen, in the absence of clear proof that at the time of committing the act charged against them they knew its wrongfulness.

2.  Idiots, lunatics and insane persons."

Plainly, the statute provides that children under the age of fourteen are incapable of committing crimes in the absence of clear proof that they knew the wrongfulness of their acts.

The Arizona statute A.R.S. § 13–135 is a recognition of the common law rule that infants between seven and fourteen were rebuttably presumed to be incapable of

crimes; that is, incapable of entertaining criminal intent. 1 Wharton's Criminal Law and Procedure, § 35, at 76–78 (by R. Anderson 1957).

■■ In the prosecution of a juvenile, the burden is on the state to show that he is capable of appreciating the nature of his act, Juvenile Court v. State ex rel. Humphrey, 139 Tenn. 549, 556, 201 S.W. 771, 773 (1918). It is therefore plain that the statute has a reasonable basis in that it is designed for the protection of the youthful immature. If, in the instant case, the jury understood the court's instructions to mean that it was the defendant's burden to clearly prove that the complaining witness knew the wrongfulness of his act, nonetheless this would not be a denial of due process of law under the fourteenth amendment. We cannot say that the statute violates generally accepted concepts of basic standards of justice. Leland v. Oregon, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952).

However, the foregoing clearly points up the seriousness of defendant's further complaint that he was prejudicially limited in his cross-examination of the complaining witness. The following occurred at the trial:

"Q What grade were you in at that particular time?

A I just come out of the sixth grade. I was going to be in the seventh grade next year.

Q And at that particular time had you had any religious training of any kind?

A Yes.

\* \* \* \* \* \*

Q Had you been going to church regularly from your early childhood up to the present date?

[THE PROSECUTION]: Objection. I don't think that's material to the issue before the Court.

THE COURT: Objection sustained.

[COUNSEL FOR DEFENDANT]: (Continuing) What kind of grades were you getting in school?

[THE PROSECUTION]: Objection. I don't think that's material, either.

[COUNSEL FOR DEFENDANT]: Your Honor, I think it goes to this boy's intellect and to—

THE COURT: Objection sustained."

■ We have repeatedly held that great latitude should be given in cross-examination in a criminal case. We said, for example, in State v. Holden, 88 Ariz. 43, 54, 352 P.2d 705, 713 (1960), that "a party against whom a witness is produced has a right to show everything which may in the slightest degree affect his credibility." The rule is especially applicable where the witness is an accomplice testifying for the state, *Holden, supra*, 88 Ariz. at 55, 352 P. 2d at 714.

■ We think in the light of the court's instructions that a child under the age of fourteen is incapable of committing a crime in the absence of clear proof that he knew of the wrongfulness of his act, the inquiry into the complaining witness' general intelligence and into his religious training were particularly material to establish the possibility that the complaining witness may have known of the wrongfulness of his acts. Thereby, the jury could conclude that the complaining witness was an accomplice whose testimony required corroboration within the meaning of the Arizona statute.

We further hold that the defendant was also unreasonably limited in his cross-examination when the trial court sustained an objection as to the time of the complaining witness' sexual activities with another boy. The following occurred during the course of the cross-examination:

"Q When in point of time did you engage in these activities with the first individual you referred to?

A G—— F——, you mean?

Q Yes.

[THE PROSECUTION]: Object; immaterial.

THE COURT: Objection sustained."

The trial court's ruling was particularly prejudicial in the light of the State's subsequent argument to the jury. In the opening argument, counsel for the State said:

"He testified in very vivid, lurid detail as to what happened on the occasions up in the New River area. It's a very traumatic, and maybe you would call it exciting experience for this youngster, *who had never participated in things like that prior to being involved with the defendant.*" (emphasis supplied)

In closing, the State argued, over the defendant's objection:

"He could have said Joe Blow down the street, but he didn't, he said Ray Taylor because the defendant taught him those acts. The defendant was the first with him—

[COUNSEL FOR DEFENDANT]: Object, Your Honor. There's been no evidence as to that.

[In point of fact, there was no evidence that the defendant was the first or that he taught the complaining witness.]

THE COURT: Overruled. You may proceed.

\* \* \* \* \* \*

[THE PROSECUTION]: The defendant was the first. There is no question that it was voluntary, \* \* \*."

The trial court further prejudicially limited defendant's cross-examination when it twice sustained objections to attempts by defendant's counsel to determine what, if any, action had been taken by the State against the complaining witness. As counsel for defendant stated at the time of the court's ruling: "I think it's material as to \* \* \* the motive of this witness."

Thereafter, the State argued to the jury to the obvious prejudice of the defendant:

"It's the State's contention that the State's witness is a very believable witness. There's absolutely no reason, as brought out by the State's case, absolutely no reason that was brought out by the

case of the defendant, from all the witnesses the defendant presented, why this complaining witness, young _____; would file maliciously or press charges against this defendant if they weren't true, and they are true."

For the foregoing reasons, the judgment of conviction is reversed with directions that the defendant be granted a new trial.

HAYS, C. J., and CAMERON, V. C. J., concur.