845 P.2d 1094

**STATE of Arizona, Appellee,**

v.

**Joe D. CORNELL, Appellant.**

**No. 1 CA-CR 90-991.**

Court of Appeals of Arizona, Division 1, Department D.

April 21, 1992.

Review Denied March 2, 1993.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Div., and Jon G. Anderson, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Spencer D. Heffel, Deputy Public Defender, Phoenix, for appellant.

EHRLICH, Judge.

Joe D. Cornell ("defendant") appeals from his conviction for aggravated assault and sentence. Because of trial juror misconduct, we reverse the judgment and remand this matter for appropriate further proceedings.

FACTS AND PROCEDURAL HISTORY

The defendant was indicted on January 12, 1990, for aggravated assault, a class 3 felony, after he allegedly tried to hit the victim with his vehicle. The indictment was amended twice to allege that the aggravated assault was a dangerous felony because the defendant had used an automo-

bile and to allege that the aggravated assault was committed while the defendant was on probation for a felony conviction. The matter proceeded to trial.

After closing arguments, the jury was instructed in part as follows:

> The crime of aggravated assault requires proof of the following two things: One, the defendant committed an assault, which requires proof that the defendant intentionally put another person in reasonable apprehension of imminent physical injury; and, two, the assault was aggravated by the defendant using a dangerous instrument.

> The crime of aggravated assault includes the less serious crimes of attempted aggravated assault and/or disorderly conduct. You may find the defendant guilty of a less serious crime only if you find unanimously the State has failed to prove the more serious crime beyond a reasonable doubt but has proved the less serious crime beyond a reasonable doubt.

> The crime of attempted aggravated assault requires proof that the defendant intentionally committed any act which was a step in a course of conduct which the defendant believed would end in the commission of a crime.

The jury was unable to reach a verdict and was excused until the next day. Prior to dismissal, a juror inquired whether he could take home a copy of the instructions, to which the court responded that such was not allowed. The court further cautioned the jury, as it had at the outset of trial, not to do any "research" on the case:

> And don't do any research about this case on your own tonight. For instance, don't read the law. Don't visit the loca-

tions where the events of the case took place. Just don't do anything regarding this case at all and keep that in mind. It's awfully important that you follow the Court's admonitions.

The following morning, without the jury present, the trial court informed the parties that the same juror had returned with a dictionary. The defendant unsuccessfully moved for a mistrial. The jury continued its deliberations and later found the defendant guilty of aggravated assault, a class 3 felony and dangerous offense.

The defendant timely moved for a new trial. He claimed that he had been denied a fair and impartial jury because the juror had consulted a dictionary for definitions of material words and phrases in the instructions.

At the hearing on the motion, the juror whose conduct had been questioned testified that on the day before he voted, he had been a "hold-out" because he could not decide whether the defendant was guilty of aggravated assault or attempted aggravated assault. The juror never had considered a not guilty verdict. He confirmed that prior to being dismissed on the first day of deliberations, he had requested but had been denied permission to take the jury instructions home and had been admonished not to do research. The juror further testified that, nonetheless, he had consulted the American College Dictionary at home and had reviewed definitions of "aggravate" and "assault." [1] He then considered the dictionary definitions when he deliberated to reach his decision. In fact, according to his own testimony, reading the definitions was "like a light bulb going off in [his] head." Asked whether the dictionary definitions "swayed or influenced you

---

1. The word "aggravate" was defined as:
   1. to make worse or more severe; intensify, as anything evil, disorderly, or troublesome: to aggravate guilt; grief aggravated her illness.
   2. *Colloq.* to provoke; irritate; exasperate: threats will only aggravate her.

   The word "assault" was defined as:
   1. act of assailing; an attack; onslaught.
   2. Military. the stage of close combat in an attack.
   3. Law. an unlawful physical attack upon another; an attempt or offer to do violence to another, with or without a battery, as by holding a stone or club in a threatening manner.
   4. rape.
   5. to make an assault upon; attack; assail.

insofar as reaching your decision of guilty," the juror responded that "[t]hey made my decision for me, if you will." The juror added that after he had reached his decision, he had informed the other jurors that he had consulted a dictionary but he believed that his statement did not affect the other jurors because he was the last juror to vote.

Following the hearing, the court recognized that the juror's conduct was inappropriate and in contravention of its admonition, but it did not find that the defendant had been prejudiced or denied his right to a fair trial. The court thus denied the motion for new trial and proceeded to sentencing.

The trial court found that the defendant had been on probation when he committed the aggravated assault. It then sentenced the defendant to a term of life imprisonment with credit for 193 days served, to be served consecutively to the sentence in another case. The defendant timely filed a notice of appeal.

On appeal, the defendant argues that the trial court abused its discretion in denying his motion for a new trial based on juror misconduct. He asserts that the dictionary definition of assault to which the juror referred dramatically differs from the jury instructions because the dictionary definition includes "an attempt or an offer to do violence." The state maintains that a new trial due to this juror's misunderstanding is not necessary and that the defendant was not prejudiced because there is no evidence that the juror ignored the court's instructions. The state also contends that if there was error, it was harmless because the evidence was such that the jury still would have found the defendant guilty of aggravated assault.

### DISCUSSION

A court has discretion to permit a new trial if a juror received evidence that was not properly admitted during trial; we will not reverse its decision absent an abuse of that discretion. *E.g., State v. Hansen*, 156 Ariz. 291, 295, 751 P.2d 951, 955 (1988); *State v. Garcia*, 141 Ariz. 580, 583, 688 P.2d 206, 209 (App.1984); Ariz.R.Crim.P. 24.1(c)(3)(i). A defendant is entitled to a new trial if we cannot conclude beyond a reasonable doubt that the extraneous evidence did not contribute to the verdict. *State v. Chaney*, 141 Ariz. 295, 311, 686 P.2d 1265, 1281 (1984); *State v. Poland*, 132 Ariz. 269, 283, 645 P.2d 784, 798 (1982).

We recognize that juror misconduct involving reference to outside sources, including dictionaries, usually has been found to be harmless error. *E.g., State v. Holden*, 88 Ariz. 43, 51, 352 P.2d 705, 710–11 (1960); *Lane v. Mathews*, 74 Ariz. 201, 206, 245 P.2d 1025, 1028, *rev'd on other grounds*, 75 Ariz. 1, 251 P.2d 303 (1952); *United States v. Steele*, 785 F.2d 743, 748–49 (9th Cir.1986). In *Holden*, the supreme court found that a juror's reference to a California treatise on jury instructions did not prejudice the defendant because she was "more considerate and more fair to the defendant" after consulting the treatise than she otherwise would have been. 88 Ariz. at 50, 352 P.2d at 711.

In *Lane*, the supreme court summarily found that the appellants in a civil action were not prejudiced when jurors obtained a dictionary for definitions of words used in interrogatories and the court's instructions. The court neither quoted the words in question nor provided the context in which this occurred, saying only that the practice was not "sanctioned," but that the error was harmless in this case. 74 Ariz. at 206, 245 P.2d at 1028.

More recently, the Ninth Circuit concluded that several jurors' unauthorized use of a dictionary did not affect the verdict. The court reasoned that because the definitions to which the jurors referred were for terms the court did not define or even use in its instructions, they were not contrary to the court's instructions; the jurors did not use the dictionary definitions to formulate their own legal standards nor disregard the court's instructions. *Steele*, at 745, 746,

748. However, the circumstances of the present case persuade us to decide otherwise.

The dictionary definitions used by the juror during deliberations in this case were neither admitted into evidence at trial nor included in the trial court's instructions to the jury. Rule 24.1(c)(3)(i); *see State v. McLoughlin*, 133 Ariz. 458, 461, 652 P.2d 531, 534 (1982). Accordingly, we must decide if this extraneous evidence affected the verdict.

The trial court defined the crimes of aggravated assault and attempted aggravated assault in its instructions to the jury quoted above. The dictionary definitions of the words "aggravate" and "assault," quoted in footnote 1, however, are not fully congruous with the instructions. The explanation of "aggravate" says nothing of the use of a dangerous instrument. The definition of "assault" in a legal sense is "an unlawful physical attack upon another; an attempt or offer to do violence to another, with or without a battery," the word "attempt" apparently being included to distinguish the common law definition of assault from battery. *See* former A.R.S. § 13-241 *et seq*. It does not instruct the reader whose perception or mental state is of concern. However, the jury instructions make clear that for the offense of attempted aggravated assault, the defendant's intent and belief are material, *see* A.R.S. § 13-1001(A)(2), while for the crime of aggravated assault, the victim's perception and the defendant's mental state are at issue. *See* A.R.S. §§ 13-1203(A), 13-1204(A)(2).

The juror testified that before he consulted the dictionary, he was confused about the instructions and undecided whether the defendant was guilty of aggravated assault or attempted aggravated assault. He stated that his reference to the dictionary "made" his decision that the defendant was guilty of aggravated assault. Particularly since the juror had been expressly told not to consult outside references, his statements create grave doubt that he followed the trial court's instructions. While the offending juror may not have influenced the other jurors in reaching their decision, unanimity was required to convict the defendant and the juror's conclusion may have been different had he not consulted extraneous sources. *See* A.R.S. § 21-102(A).[2]

Based on the evidence, we cannot conclude beyond a reasonable doubt that the juror's use of the dictionary did not contribute to the verdict. The trial court erred in denying the defendant's motion for new trial.

The conviction and sentence are reversed and the matter is remanded for further proceedings consistent with this opinion.

TAYLOR, P.J., and GERBER, J., concur.

---

2. It remains unclear why, when the dictionary definition of "assault" included the word "attempt," the juror did not vote to find the defendant guilty of "attempted aggravated assault."