NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

CHRISTOPHER REY LICON, *Appellant*.

No. 1 CA-CR 16-0018
FILED 3-1-2018

Appeal from the Superior Court in Maricopa County
No. CR 2011-100207-001 DT
The Honorable Sherry K. Stephens, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

The Hopkins Law Office, PC, Tucson
By Cedric Martin Hopkins
*Counsel for Appellant*

## MEMORANDUM DECISION

Presiding Judge Michael J. Brown delivered the decision of the Court, in which Judge Maria Elena Cruz and Judge Patricia A. Orozco[1] joined.

**B R O W N**, Judge:

¶1        The sole issue in this case is whether Christopher Licon's constitutional right to confront witnesses was violated when the superior court restricted Licon's counsel from cross-examining a witness on the underlying details of favorable plea agreements the witness received in exchange for testifying against Licon.  Finding no reversible error, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

¶2        In January 2011, the State charged Licon with first-degree murder, a dangerous felony (Count 1); burglary in the first degree, a dangerous felony (Count 2); kidnapping, a dangerous felony and dangerous crime against children (Count 3); first-degree murder, a dangerous felony and dangerous crime against children (Count 4); burglary in the second degree (Count 5); and tampering with physical evidence (Count 6).  The State filed notice of its intent to seek the death penalty if Licon were to be convicted of first-degree murder.

¶3        At trial, Licon presented a guilty except insane defense.  To establish his defense, Licon was required to prove by clear and convincing evidence that he "was afflicted with a mental disease or defect of such severity that [he] did not know the criminal act was wrong."  Ariz. Rev. Stat. ("A.R.S.") § 13-502(A), (C).  To counter Licon's defense, as part of its case, the State called Anthony Casillas as a witness to testify regarding incriminating statements Licon made to Casillas while they were incarcerated during their respective pending criminal proceedings.  Licon, in turn, cross-examined Casillas regarding, among other things, the favorable treatment he received from the State for testifying.

---

[1]        The Honorable Patricia A. Orozco, retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

¶4        At the conclusion of the guilt phase of the trial, the jury found Licon guilty of the lesser-included offense of second-degree murder on Count 1, acquitted him on Count 2, and found him guilty on the remaining charges.  Following the penalty phase, the jury returned a verdict of a life sentence on Count 4.  The superior court then sentenced Licon to varied terms of imprisonment, including natural life on Count 4.  This timely appeal followed.

## DISCUSSION

¶5        Although the "right of cross-examination is a vital part of the right of confrontation conferred by the Sixth Amendment," the superior court "has discretion to curtail its scope." *State v. Fleming*, 117 Ariz. 122, 125 (1977).  "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).  "We evaluate cross-examination restrictions on a case-by-case basis to determine whether the defendant was denied the opportunity to present evidence relevant to issues in the case or the witness' credibility." *State v. Abdi*, 226 Ariz. 361, 367, ¶ 22 (App. 2011) (internal quotation marks and citation omitted).  We will not disturb the superior court's determination of the proper scope of cross-examination absent a clear showing of prejudice. *State v. Doody*, 187 Ariz. 363, 374 (App. 1996).

¶6        Licon argues the superior court improperly limited his cross-examination of Casillas to only the circumstances of Casillas' plea agreements and not the underlying facts of the charges, which would have "damaged his credibility with the jury."  According to Licon, if the jury had been informed of the "particulars" of Casillas' convictions stemming from his plea agreements, "then his testimony would have carried little weight with the jury."[2]

¶7        Before trial, the State moved to preclude evidence, testimony, and argument regarding Casillas' prior and underlying offenses and to

---

[2]        During Casillas' change of plea proceeding, the court initially refused to accept the factual basis of his guilty plea because Casillas failed to take full responsibility.  Later in the proceeding, however, a new factual basis was made and the court accepted it.

excise the names of the offenses from his plea agreements.[3] Licon opposed the motion, asserting he had a Sixth Amendment right to cross-examine Casillas and present extrinsic evidence relating to his prior felony convictions. Licon argued the underlying facts of Casillas' prior felony convictions and plea colloquy were admissible because they would show lack of credibility and breach of the "testimonial agreement" Casillas signed, which required him to tell the truth during all stages of investigation and all proceedings related to the case.

¶8        The superior court granted the State's motion to sanitize the prior convictions and redact the plea agreements to remove the names of the offenses to which Casillas pled guilty. The court, citing Arizona Rule of Evidence 403, found that "the probative value of testimony regarding the names of the offenses and/or the factual basis for the offenses is substantially outweighed by the danger of unfair prejudice, confusion of issues, and/or misleading the jury." The court explained that Licon could "achieve his goal of impeaching the credibility, bias and motive of [Casillas] without reference to the names of the offenses to which he pled guilty." The court also ruled that Licon could not impeach Casillas with the alleged inadequate factual basis for his guilty pleas because it "would involve lengthy testimony, confuse the jury, result in unfair prejudice, and waste time." The court deferred ruling on whether Licon could impeach Casillas with false statements made during the defense interview.

¶9        At trial, Casillas testified that he met Licon at the Maricopa County Jail. Eventually, Licon told Casillas why he was in jail, explaining that he and his half-brother ("Brother") got into a fight over drug profits because Licon was staying at Brother's house and Brother felt he should have more of the profits. Licon lost his temper and shot Brother in the back of the head while he was on a couch. Brother's six-year-old son ("Nephew") began crying. Using Brother's car, Licon took Nephew, the gun, and drugs to his aunt's house. Nobody was there, so he told Nephew he was going to try and get in through the back. Licon then shot Nephew in the back of the head in the backyard of the house because "the little boy was . . . going to get him busted." He later took the gun and drugs to Arizona State University ("ASU") and hid them. Casillas also testified that

---

[3]        In exchange for the reduction of his charges and potential sentences, Casillas pled guilty to attempted child abuse, child abuse, and possession of dangerous drugs.

Licon never spoke to himself, mentioned hallucinating, or swatted at things that were not there.

¶10        The State's direct examination of Casillas covered the classes of felonies he pled guilty to, the sentences he received, and the length of imprisonment he faced if he did not enter an agreement with the State. Direct examination also addressed Casillas' free talk and two plea agreements. Casillas' participation in a free talk, which occurred before he entered the plea agreements, did not guarantee Casillas a better plea deal. The terms of both plea agreements were contingent upon a testimonial agreement in which Casillas was required to provide complete and truthful testimony regarding Licon during all stages of investigation, discovery, interview, deposition, or any proceeding in any court.

¶11        Licon asked for reconsideration of the court's prior ruling, requesting permission to delve into the change of plea proceedings—that Casillas allegedly admitted to factual bases for the pleas but later disavowed such bases during a defense interview. The court permitted Licon to cross-examine Casillas outside the presence of the jury. Casillas confirmed he understood he was required to tell the truth during interviews and admitted he was not completely honest while pleading guilty because he pled guilty to crimes he believed he did not commit. Casillas noted the range of sentences he faced and explained the reasons he pled guilty, such as the circumstances of the offenses would likely have an emotional impact on the jury, the sentences would likely be aggravated, he was ready to move from county jail, and his children were gone so he had nothing else to care about. When questioned by the State at the hearing, Casillas testified he had always maintained he was not responsible for two of the three charges to which he had pled guilty.

¶12        Concerned that introducing the details of Casillas' conviction would confuse the jury and turn into a mini-trial, the court again ruled that the details of Casillas' prior convictions were not to be discussed unless something happens, such as the "door is opened or the [c]ourt sees a need for some details to be provided in order to explain some statements made by the witness elicited by one party or the other." The court indicated it would permit, however, cross-examination of Casillas about his conflicts between the statements he made to the judge during his change of plea hearing and those made to defense counsel during his interview. Licon would also be allowed to question Casillas about the reasons he entered the plea agreements with the State.

¶13        After the ruling, the court permitted the State to reopen direct examination of Casillas to cover that he disagreed with the factual bases of the two plea agreements but nonetheless pled guilty because it was advantageous to him.  Casillas admitted he "kind of" lied to the court.

¶14        On cross-examination, defense counsel addressed Casillas' testimonial agreement, which required Casillas to testify truthfully and provided that the plea agreement could be revoked if he was not truthful.  Casillas admitted to lying to the judge when he pled guilty to two of the factual bases he disagreed with and that the State never revoked the plea agreements.  Cross-examination also covered defense counsel's interview with Casillas, in which Casillas denied any involvement in two of the charges he pled guilty to.  First, Casillas agreed that he pled guilty to those two charges because it was a "tragic case" where the facts were "really severe, really egregious, [and] really over the top," and he was concerned about the emotional impact those facts and some "bad photographs" would have on a jury.  Second, Casillas admitted he did not "want to do 30 years in prison for this really sad, tragic, ugly case that [he] was charged with."  Third, Casillas wanted to get out of jail because the living conditions are better in the Department of Corrections.  Fourth, he had a "general feeling of guilt for [his] lifetime of crime, drug use, and other improprieties," especially for his most recent case.  He acknowledged he "felt like [he] let his children down."

¶15        Cross-examination also covered the sentences Casillas could have received and the benefit he actually received by entering the plea agreements.  He admitted to being a lifetime user of methamphetamine and having a bad memory that is probably attributable to a lifetime of drug abuse.  He previously used drugs (marijuana, methamphetamine, and hooch[4]) in prison and was once written up for having hooch in his cell.  When Casillas entered his plea agreements, he avowed that he had no more than five felonies but he actually had more than nine felony convictions.  He was also placed in a 23-hour-lockdown section of a jail when he first arrived for getting "into it with the police at the jail."  Additionally, he was once at an apartment when the police knocked on the door.  He gave the officers a fake name through the door because he was "high" and had an outstanding warrant.

---

[4]        Casillas testified that "hooch," insofar as it relates to the penitentiary system, is a form of alcohol that inmates make in a cell.  It is made from fermented fruit and sugar.

¶16     The defense also sought to discredit Casillas' testimony by pointing out inconsistencies between his testimony and what actually occurred.  For instance, even though Casillas testified Licon killed Brother because of an argument over drug profits, Casillas did not know that Brother was found reclined on a couch with a remote control in his hand.  Casillas also did not know that Licon only had $29 in his possession when he was arrested and Brother had over $1,000.  Casillas testified Licon took Nephew to his aunt's house and shot him in the backyard when nobody was home.  Casillas was unaware, however, that Licon took Nephew to Nephew's mother's house and shot him in an alley behind the home while Nephew's brother was home.  Moreover, in an interview with detectives, Casillas said that Licon took the drugs and gun to ASU and he assumed he stashed it in the dorms.  The defense was able to use this statement to elicit testimony that Casillas was not aware Licon was not living in the ASU dorm at the time of the crimes.  The defense also elicited testimony that Casillas could not remember the day or month Licon told him about the murders.

¶17     Finally, cross-examination also covered Licon's mental condition in jail.  Casillas testified Licon would get a weird look in his eye like he "could see right through you."  Casillas observed Licon had a blank stare "maybe twice."  Casillas believed drugs caused it, but not any drug he was aware of.  He also testified that Licon was a pretty nice guy who helped him out when he did not have money to buy items from the commissary.

¶18     The scope of "cross-examination is within the sound discretion of the trial judge; nevertheless, if the trial judge has excluded testimony which would clearly show bias, interest, favor, hostility, prejudice, promise or hope of reward, it is error and will be ground for a new trial."  *State v. Holden*, 88 Ariz. 43, 55 (1960).  On this record, the superior court did not abuse its discretion by precluding Licon from inquiring about the specific details of the crimes Casillas committed.  Despite the limitation, Licon was given substantial leeway in eliciting information surrounding the plea agreements, the testimonial agreement, and other facts intended to discredit Casillas' testimony:  Licon elicited testimony that Casillas entered plea agreements to receive reduced punishment for egregious criminal acts; did not accept full responsibility for the crimes underlying the guilty pleas; was not forthright with the judge regarding the factual basis of the guilty pleas; repeatedly abused drugs, resulting in memory loss; had nine felony convictions; and spent most of his life in prison.  Thus, the court's limitation did not prevent Licon from impeaching the witness or prevent the jury from learning what Casillas expected in exchange for his testimony.  *See State v. McElyea*, 130 Ariz. 185,

186-87 (1981) (affirming superior court's limitation on cross-examining a witness about a criminal charge that would not have "revealed any bias or interest that the witness might have in testifying against a former codefendant").

**¶19**        Accordingly, Licon has not demonstrated that he was denied his confrontation rights. *See Doody*, 187 Ariz. at 367, 374 (affirming superior court's exclusion of graphic details of a witness' prior murder conviction and other uncharged offenses because such details "would have added nothing of relevance to establish [the witness'] motive or bias" and the court permitted defendant to examine the witness regarding the benefit he received by testifying against the defendant); *cf. State v. Montano*, 204 Ariz. 413, 426, ¶¶ 64-66 (2003) (affirming the sanitization of a witness' possession of child pornography and attempted child molestation conviction based on Arizona Rule of Evidence 609, as defendant was still able to bring out the fact of witness' prior felony convictions).

## CONCLUSION

**¶20**        For the foregoing reasons, we affirm Licon's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:  AA